Good morning, your honors. This case presents a unique question. The first point we raised was we allege that, well let me back up with some background. Mr. Strickland was charged with aiding and abetting his co-defendant, Elia Rahm, in the possession with intent to distribute more than 500 grams of methamphetamine. Later, a superseding indictment came down adding two firearms charges, felon in possession and possession of a firearm in furtherance of a drug trafficking offense. The case was set for trial in October of 2024. There was a pretrial hearing on the 4th, I believe it was, where the court ruled that certain 404B evidence would be allowed in the evidence. After that, Mr. Strickland entered into a plea agreement where he agreed to plead to an information charging possession with intent to distribute in excess of 50 grams of methamphetamine, the same charge his co-defendant pled to. The problem arose at the sentencing in February 2025 after the judge had accepted the plea and the plea agreement. Mr. Strickland was granted allocution. During the allocution, Mr. Strickland kind of waffled. I suppose in fairness you could say he did a little bit more than waffle. The court found that he was not accepting responsibility for the crime to which he was pleading guilty. The court recessed the sentencing hearing for a couple of weeks and when it reconvened, the court asked Mr. Strickland if his responses would be the same. In other words, would his allocution statements be the same and he said yes. He didn't want to change anything. He wanted to proceed with the plea. He told the judge on several occasions he wanted to proceed with the plea. The judge said, I believe he said I can't sentence him. I believe he said he would entertain a motion to withdraw the plea. Exactly. But then you so moved. Yes sir, at that point we had no alternative. Well that's the question I had for you. Why didn't you have an alternative? Why couldn't you say, Judge, we're entitled to be sentenced. We've pleaded. You've accepted the plea. We want to proceed. Well, we did say that. We told the judge we wanted to proceed. I know, but I mean after he said he would entertain the motion, you had the option, did you not, to say we have no such motion for you? I suppose I could have, yes sir, but we had already made it clear to the court we wanted to proceed with the plea. So the court... Well that's the concern is whether by changing your mind, you might say, and moving to withdraw, you have effectively waived your argument that he was entitled to be sentenced. That's the government's argument, yes sir. So what do you say to that? I would say we haven't waived it because we repeatedly said, albeit before the judge said he was going to reject the plea agreement, we repeatedly said we wanted to continue with the plea. So the court revoked its acceptance of the plea agreement. The plea agreement had already been accepted by the court. Our first point is a question of law, whether the court had the authority to reject the plea agreement after it had been accepted. We say that there's nothing in Rule 11 that allows that course of action after the plea has been accepted. And we cite one of this court's own cases, the Olson case, in support of that proposition. In Olson, admittedly Olson was a Rule 11 C1C plea agreement where the government had stipulated that Mr. Olson would fall into Category 1 in his criminal history and further stipulated that his sentencing guideline range was a certain parameter. After the court received the pre-sentence investigation report, it learned that Mr. Olson was in fact a Category 2 criminal history. And that raised, of course, the sentencing guidelines accordingly, so the court in effect modified the plea agreement and sentenced him in accordance with a Schedule 2 criminal history and the corresponding guideline range. This court held that the court didn't have authority to do that under Rule 11. We contend, by extension, that the court didn't have authority to reject the plea agreement entirely after it had been accepted. Counsel, why would the so-called fraud exception not apply here to allow the district court to withdraw its acceptance? That's a good question. One of the main reasons is because Mr. Strickland didn't perpetrate a fraud on the court. The court specifically held in its remarks that Mr. Strickland's allocution statements were not materially different than the statement of material facts contained in paragraph 4 of the plea agreement. In other words, what he said in allocation did not really materially differ from what he said in the plea agreement. So that, we contend, was not fraud. There's a couple things here in that point. First of all, the plea itself was accepted. And the acceptance of the plea agreement was deferred until the time of sentencing.  At the time of sentencing, before the allocution, the judge accepted the plea agreement. Correct. So he's got both those things that he's done at that point, right? Yes, sir. And by accepting the plea agreement, it's taken other charges off the table, right? Yes, sir. When does jeopardy attach? I'm sorry? When does jeopardy attach under those circumstances? Right? Because here's what I'm saying. You've got the Rule 11 argument, but the real question is, after someone's been convicted, because once you accept the plea, they're convicted, and once you accept the plea agreement, which has the effect of dismissing the other charges, has jeopardy attached on those other charges? Yes, sir. Do you have any authority for that? No, sir. Not at the present time. Are the other charges dismissed upon acceptance of the plea agreement or upon entry of a judgment ordering them dismissed? Normally, upon entry, well, upon pronouncement of the sentence, the government would then, assuming the plea agreement went through, the government would then move to dismiss the remaining charges. So, we contend that the court was just not authorized to do that under Rule 11. Now, if the court decides we're wrong, then our argument is that the court should not have allowed those statements made at allocution to be introduced as substantive evidence at the trial. The court allowed Mr. Strickland to withdraw his plea. The court specifically said that it was not finding that Mr. Strickland breached the plea agreement, but he said he found fair and just reasons to allow Mr. Strickland to withdraw the plea. At that point, our contention is that Rule 11F points to Rule of Evidence 410, which specifically says that plea statements and other statements in connection with a guilty plea are not admissible after the plea is withdrawn. So, interestingly, the district court said that the plea agreement and anything said at the plea hearing would not be admissible. It based its ruling on 403. But he did rule that statements that Mr. Strickland made in his allocution were admissible. I contend that 410 doesn't allow that. Number two, that ruling is completely contradicted to the court's ruling that Mr. Strickland did not, he wasn't finding that Mr. Strickland breached the plea agreement. And the court specifically said, not going to allow the plea agreement or any statements made during the change of plea hearing. But he could allow statements made at the sentencing hearing. That, we contend, is inconsistent and directly violates Rule 410 because the plea had been withdrawn at that point and the court did not find a breach of the plea agreement. We made... You say the plea had or had not been withdrawn? Well, the plea had been withdrawn when the court ruled that the statements made at allocution was admissible. There was a... Yeah, even at the time of the trial. Yes, at the time of the trial. Of course it had been withdrawn, yeah. Yeah, there were preliminary motions... But the allocution statements weren't made in a plea bargaining process, were they? No, not directly in the plea bargaining process, but under Rule 410, it says evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions. A, or excuse me, one, a guilty plea that was later withdrawn is not admissible. A, no low contendory plea. Or number three, a statement made during a proceeding on either of those pleas. The sentencing hearing and the allocution was a proceeding under a guilty plea that was withdrawn. We contend, you know, 410 directly prohibits that. The argument is advanced that that only covers statements made at the change of plea. That the sentencing hearing is no longer, should no longer be related to the plea. The allocution is related only to sentencing. Well, the plea proceeding or the sentencing proceeding, and those statements were made at allocution, that is a proceeding arising from the withdrawal of the guilty plea, as 410A3 prohibits. Well, it says a proceeding on a guilty plea. You think the sentencing allocution was part of a proceeding on a guilty plea? Yes, sir. All right. Does this come up before? Have you found any authority on that? I haven't found any, no, your honor. All right. Thank you. Would you like to save any time for rebuttal? Yes, I would save the remaining time, please.  Thank you. You may. Mr. Eaton, we'll hear from you. May it please the court, Kevin Eaton, on behalf of the United States, the district court's judgment here should be affirmed in all respects. On appeal, Mr. Strickland raises two principal arguments, neither of which has a basis given the extensive record here or the governing law that applies. The first is that the district court violated his rights under Rule 11 and due process by rejecting the plea agreement. There are two central errors in the defendant's argument on this point. The first and most important is that the defendant seems to be conflating the issue of the rejection of the plea agreement and the withdrawal of the plea. His briefing on several occasions says that the district court's rejection of the plea agreement compelled withdrawal of the plea. That's simply not true. These are two separate and independent, although related, issues, and Mr. Strickland's conflation of the two leads directly into why the government has argued that the invited error doctrine applies here. If you scrutinize Mr. Strickland's brief, the harms that he's complaining of, the loss of acceptance, the fact that he is now exposed to a broader criminal exposure in terms of the charges that he ultimately faced, those had nothing to do with the district court's rejection of the plea agreement. Can the invited error doctrine apply where the district court refused to sentence him? Your Honor, the district court certainly expressed that it did not believe on this present record it could sentence. And so I think taken in context what the district court was saying was it was not going to sentence on the status quo. In other words, it was not going to sentence Mr. Strickland without making some alteration. One, he could have lost acceptance because the district court had expressed at the first aborted sentencing hearing that the statements that he made were inconsistent with the statements that he had admitted in the plea agreement and the statements in the PSR which he never objected to and which are deemed admitted under this court's rules. So I think taken in context, that's what the district court was saying. Well, I don't know about that because he could have sentenced him just like you said. He said, I'm going to sentence you and you're not getting acceptance. That's not what he did. He said, I can't sentence you at all. Well, Your Honor, the district court ultimately said, and especially expressed this in his order, allowing the defendant to withdraw his plea, that he believed that Rule 11b-3 here was posing an issue, which says that he should not enter judgment unless there was a factual basis for the plea. And so his statements— He had already found a factual basis for the plea and accepted it, right? I mean, and that's the real question. Can you go back and change that? And now, the other point that I see is like, okay, he made the motion to withdraw, and the motion to withdraw creates an invited error in your analysis. But what was he supposed to do? Refuse to withdraw his plea? Seek a writ of mandamus from the court of appeals directing sentencing to proceed? No, Your Honor. I think if you—the record suggests, and in fact the district court explicitly said, he was going to entertain a motion to withdraw the plea. And he went so far as to say, and I don't know how I'm going to rule on that yet. In other words, it was not a, you're going to be forced to withdraw your plea. It simply said, as Rule 11 provides, that if the district court rejects the plea agreement, which he did at that point, he has to afford the defendant an opportunity to withdraw his plea. Nothing obligated Mr. Strickland to accept that. Had Mr. Strickland said, No, Your Honor. I really want to accept this plea and proceed. What if the judge had said, I'm sticking to what I said earlier. I can't sentence you in good conscience. Your Honor, then I think we'd have a different case. What would happen next? If the district court refused to sentence, I think it would have to decide what to do. I mean, I don't know. That's obviously not what happened here. I mean, it was at a sentencing hearing. And so the district court might have, I don't know what the district court would have done at that point. We don't need to speculate, of course, because Mr. Strickland ended up taking the district court up on its offer to withdraw his plea. And so that's not a situation that we had to face because Mr. Strickland ultimately made that choice and, as the government argues, invited any error. Because the harms that he's complaining of did not stem from the rejection of the plea agreement. On its own, that rejection had no independent legal effect. It didn't reduce his acceptance of responsibility. It didn't compel a withdrawal of the agreement. It was only when Mr. Strickland moved to withdraw his plea that we then had the set of events that he now complains about. You know, once you announce the sentence as a district judge, your hands are tied in a lot of ways, right? Is it the same when the judge says, I accept the plea agreement, and then turns around later and says, I don't accept the plea agreement? Is there any... Is the significance of initially accepting the plea agreement very much unlike the announcement of a sentence, or is it similar? Your Honor, I would say it's different in this way. Rule 11, of course, allows the district court to consider the PSR before deciding whether to accept it. And the reason we believe the district court chooses to accept the plea agreement when it does in these kind of sentencings is because he wants to make sure that by the time that we have entered into a final PSR, which is he has resolved any factual objections. For example, had Mr. Strickland challenged any of the facts, he could have resolved all of that before he makes up his mind about whether the plea agreement serves the interest of the public, whether it adequately reflects the seriousness of the offense. Those are all different. And so in that way, Rule 11 operates a little bit differently, at least in the government's view. And that's why... What about the Olson case? Do you read that as saying a judge may not reverse a decision on accepting a plea agreement? Your Honor, Mr. Strickland cites Olson and he cites Scurlock. The problem with those cases are that they are 11C1C pleas. And as this court has said, those types of pleas are inherently different because an 11C1C is binding upon the district court at the time it accepts the agreement. So by extension, this is not a C1C plea. This is an 11C1A plea, and this court has had cases that say that 11C1A plea agreements are not like 11C1Cs and do not bind the district court. What do you mean by bind? So that's what our cases... In the Ingram case, which Judge Erickson, I believe you wrote for the court, this court has said 11C1A plea agreements do not bind to the court upon acceptance. That is unlike 11... What do you mean by bind? Well, in an 11C1C, for example, Your Honor, the plea agreement may say the parties agree that the sentence is 60 months. And if it's made pursuant to C1C and the district court accepts that, then the sentence must be 60 months. Right. Here, it's not a C1C. I understand that a C1A doesn't specify a sentence, but could it bind the court in a different way? This court has said that C1A agreements are not binding upon the court, Your Honor. What about the contractual relationship between the United States and the defendant where there's an agreement to dismiss the charges if the defendant pleads? Your Honor, I would say two things about that. First, this court has said that the analogy with contracts should not be taken to extremes. The second is that the agreement here, the plea agreement he entered into, said that the United States' obligation to dismiss charges arose only after the sentence was imposed. And so that obligation never arose at that point because, of course, his statements kind of created an intervening event, which, of course, necessitated the chain of events that he now complains about on appeal. I think more importantly, this court, as we can tell from the argument, has been presented with a situation that there's no case exactly on point. And I think that really works here to the government's advantage because even if this court does not decide this case at that point on the invited error doctrine, we're only here on plain error review. And, of course, this court has said that any error must be plain. In other words, it must be clear or obvious under this court's law. And despite two rounds of briefing, the only thing that Mr. Strickland can point to are cases from this court dealing with 11C1C pleas. And that's a problem for his argument. Rule 11 on its own does not give an exhaustive list of everything that could possibly happen in a plea situation. That's why we have Rule 11H, which says, if you can't show any harms from this alleged Rule 11 violation, then there is no issue. And that's the government's central premise here. The harms that he's complaining of did not stem from this rejection of the plea agreement after Mr. Strickland, for the first time during his elocution, started expressing his actual innocence. And that's why the government has suggested that this court, one, should apply the invited error doctrine, but, two, even if it does not, why it should say that on plain error review, Mr. Strickland cannot meet those exacting requirements. Simply, he has not pointed to any case from this court that would suggest that the district court erred. And, in fact, this court's cases seem to suggest otherwise because this is an 11C1A plea, not an 11C1C. As to his second argument, that the statements that he made at the time of this aborted sentencing hearing could not be used against him, either because of the privilege against self-incrimination or Rule 410, I think, as this court has pointed out, there's an initial threshold question here because these statements were not made in the course of plea negotiations. They were not made in the course of plea proceedings. This was supposed to be a sentencing hearing and it, by all accounts, looked like a sentencing hearing until the very end when the defendant, again, for the first time expressed that he did not, in fact, do what he had previously pled guilty to doing. Was it a statement made during the proceeding on a guilty plea? No, Your Honor. I mean, in context here, that seems to refer to statements made during, say, a change of plea, you know, a colloquy with the court. That would be a proceeding in connection with a guilty plea. Have you found the authority interpreting that rule? I did not. Not that was exactly on point, Your Honor. As to his privilege against self-incrimination arguments, I don't think anybody disputes that these would normally be prototypical statements of a party opponent. Mr. Strickland has cited the Estelle case as an argument that admitting these statements violated his privilege against self-incrimination. But factually, Estelle, just like the other cases he relies on, are simply not applicable. Unlike in Estelle, Mr. Strickland had counsel sitting next to him. He had been warned through the entirety of the proceedings that statements that he makes could be used against him. And it's kind of nonsensical to ask the district court to have known that despite admitting to these facts in the plea agreement, despite not objecting to any of these facts in the PSR, that for the first time in his allocution, he would suddenly express his innocence. So to suggest that the district court should have been able to predict that and to warn him before he made those statements simply has no support here on the facts. Even if this court were to determine, though, that the district court erred by allowing the government to use those admissions and the statements against interest he made during the subordinate sentencing hearing, the government has argued and continues to argue that any error would be harmless beyond a reasonable doubt. The evidence of Mr. Strickland's guilt on each and every one of the counts was overwhelming. As to the drug counts, the evidence was that he claimed the bedroom as his own in which a substantial quantity of methamphetamine, items of drug paraphernalia, and firearms were found. In fact, there was a box sitting in the bedroom that said Bruce on it. There's no question that that was his bedroom and that those drugs were found in that room. As to the firearm, he admitted in a post-Miranda interview with the detective that the firearm would have his fingerprints on it. And so his claim that these later statements that the district court allowed to be used against him in the government's case in chief were really not the crucial evidence that the jury had in front of it. And finally, as to the 924C charge again, the evidence was that the firearm was found in close proximity on his bed in his master bedroom to a substantial quantity of methamphetamine and to a substantial quantity of items indicative of drug trafficking. And so the evidence here simply was overwhelming as to his guilt. And therefore, even if this court agreed that there was an error in admitting those statements, that error would be harmless beyond a reasonable doubt. Unless this court has any questions, the government is happy to rest on the briefs and the arguments provided here. Thank you. We'll hear a brief rebuttal. Mr. Vowell? Thank you, Your Honor. Your Honor, addressing the harmless error argument as it relates to the admission of the allocution statements at trial, admittedly, there was evidence in the record from which the court or the jury could have found Mr. Strickland guilty. But one important thing is that there is no evidence in the record,  that Mr. Strickland and Mr. Rahm agreed or conspired, agreed or abetted each other in the bringing of 12 pounds of methamphetamine. Mr. Strickland, there's no evidence Mr. Strickland knew that was what was going to happen. Mr. Rahm admittedly showed up at Mr. Strickland's house on the morning of the arrest and carried in 12 pounds of methamphetamine. Sometime thereafter, Mr. Strickland walked out of the residence and was arrested. But there is absolutely no evidence that Mr. Strickland knew that Mr. Rahm was bringing 12 pounds of methamphetamine to his apartment that morning. And the admission of damning statements during the allocution had to have had an effect on the jury. Your time has expired. Thank you for your argument. Thank you. Thank you to both counsel. The case is submitted and the court will file a decision in due course. Thank you. Counsel are excused.